UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM M. BRUCKNER, JR., an individual
d/b/a FLORIDA AERIAL ADVERTISING,

      Plaintiff,

v.                                    Case No.  8:05-cv-1277-T-24EAJ

COUNTY OF PINELLAS,
A Political Subdivision of the State of Florida,

      Defendant.

_____/

## ORDER

      This cause comes before the Court on Defendant's Motion to Dismiss (Doc. No. 5).

Plaintiff  has filed a  response in opposition thereto (Doc. No. 12).[1]

## I.    Factual Background and Procedural History

      Plaintiff, William M. Bruckner, Jr., d/b/a/ Florida Aerial Advertising, operates an aerial

advertising business that utilizes single engine aircraft to tow banners displaying various types of

communication in the form of both words and pictures.  Specifically, an aerial banner is towed

behind an aircraft as it flies over pre-designated areas so that viewers on the ground below may

receive the intended communication (¶ 2).

      Defendant, the County of Pinellas, owns and operates the St. Petersburg Clearwater

International Airport ("PIE").  PIE is classified as a primary airport and is the base of operation

for multiple types of aircraft (¶ 15).  David Metz ("Metz") is the acting Airport Executive

---

[1]The Court notes that Defendant also filed a motion for leave to file a reply to Plaintiff's response in opposition to Defendant's motion to dismiss (Doc. No. 13) which was subsequently withdrawn (Doc. No. 20).

Director (¶ 15).  Plaintiff alleges that Federal Aviation Administration ("FAA") records indicate that the Defendant "is required to operate the airport for the use and benefit of the public and to make available to all types, kinds, and classes of aeronautical activity on reasonable terms, and without unjust discrimination, access to and use of the airport" (¶¶16 and 17).

Florida Aerial Advertising flies aircraft towing banners over Pinellas, Manatee, Sarasota, Pasco, and Hillsborough counties (¶14).  Plaintiff alleges that the majority of his advertising clients hire Florida Aerial Advertising to fly their aircraft adjacent and parallel to the shore of Clearwater Beach and other populated outdoor venues (¶ 14).  Plaintiff further alleges that "[t]he banner towing performed by Florida Aerial Advertising is an act of pure commercial speech" (¶2).

During 1999[2], Defendant offered to enter into an agreement with Plaintiff entitled "PERMIT FOR COMMERCIAL BUSINESS AT AIRPORT" (hereinafter "Proposed Permit"), that would permit Plaintiff to conduct banner towing operations from PIE (¶20 and Exhibit B).[3]  Plaintiff alleges that the terms of the  Proposed Permit were "unconscionable and oppressive" and calculated to deter Plaintiff from accepting (¶¶ 21 - 23).  Plaintiff then began negotiating with Defendant in an effort to modify the terms of the Proposed Permit (¶24).  Around that time,

---

[2]Plaintiff alleges "[b]ased on information and belief the Federal Aviation Administration Flight Standards organization conducted an Aeronautical Study of PIE and determined that the unobstructed area, generally East of the touchdown zone of runway 17 Left, was adequate for Banner-tow operations at PIE" (¶19).  However, it is unclear to this Court when this study occurred.

[3]When a plaintiff refers to documents in a complaint that are central to plaintiff's complaint, a court may consider the documents as part of the pleading for the purposes of a motion to dismiss.  See Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).

2

Plaintiff alleges that Defendant "embarked on a course of conduct to have Banner-towing operations at PIE unjustifiably declared unsafe" (¶24).  Specifically, Plaintiff alleges that Metz solicited letters from Air Traffic Controllers at PIE stating that, "in their 'opinion,' Banner-towing operations would compromise the safety of other operations in use at PIE" (¶¶24 - 26 and Exhibit C) and "sought and obtained the approval of the FAA Flight Services District Office Tampa manager Charles V. Nolan to confirm his intention to deny Plaintiff BRUCKNER the right to operate at PIE" (¶28 and Exhibit D).  On February 28, 2001, Metz sent a letter to Plaintiff denying Plaintiff's request to conduct banner towing operations at PIE (¶30 and Exhibit E).

On or about March 13, 2001, Defendant, by and through its Pinellas County Board of County Commissioners ("BOCC"), adopted Resolution No. 01- 45 which prohibits banner-towing operations at PIE.  Resolution No. 01- 45 states in relevant part:

> Banner-towing operations are hereby prohibited at the St. Petersburg-Clearwater International Airport.  For purposes of this Resolution 'Banner-towing' operations shall include all operations involving the pickup or drop off of a towed banner by an aircraft at said Airport

(¶¶3, 31 and Exhibit A).

Thereafter, Plaintiff filed a complaint against PIE under FAA Rules of Practice for Federally-Assisted Airport Proceedings, 14 C.F.R. pt. 16 (hereinafter "FAA Complaint").[4]  The FAA Complaint alleged that "following a vote by the County of Pinellas Commission on March 13, 2001, the Airport does not allow any aerial advertising on the airport for alleged safety

_____

[4]The Court notes that while Plaintiff references filing a true and correct copy of the FAA Complaint as Exhibit F, he really filed a copy of the December 18, 2003, Director's Determination.  From a review of the Director's Determination, it appears that Plaintiff filed his FAA Complaint on April 30, 2003 (Doc. No. 1, Exhibit F, p. 10).

reasons" and that PIE was "violating 49 U.S.C. § 47107(a)(1), which requires the airport sponsor

to make the Airport available to the public on reasonable terms and without unjust

discrimination" (Doc. No. 1, Exhibit F, p. 1).  On April 6, 2001, the National Air Traffic

Controllers Association ("NATCA"), PIE Local, notified PIE that in their opinion, "a banner

towing operation could not be conducted safely at this airport" (¶33 and Exhibit G).  On

December 18, 2003, the FAA dismissed Plaintiff's FAA Complaint against PIE and issued a

sixteen page Director's Determination ("Director's Determination") that "found that PIE was not

currently then in violation of the applicable federal law and its federal grant and surplus

obligations" (¶34 and Exhibit F).[5]  As part of the Director's Determination, the FAA considered

safety analyses and determinations which were conducted between December 15, 2000 and April

11, 2003, with respect to banner towing activities at PIE (Doc. No. 1, Exhibit F, pp. 12 - 14).

The Director's Determination included the following language with respect to Plaintiff's right to

appeal:

> Any party to this proceeding adversely affected by the Director's Determination
> may appeal this initial determination to the FAA Associate Administrator for
> Airports pursuant to 14 CFR 16.33(b) within thirty (30) days after service of the
> Director's Determination.

Plaintiff did not appeal the Director's Determination.

During 2004, Plaintiff once again requested that the FAA address the issue of banner-

towing operations at PIE (¶¶41 - 43 and Exhibits H - J).  Thereafter, in early 2005, Plaintiff

alleges that "pursuant to new FAA policies known as the 'FAA Consumer Service Initiative'" he

---

[5]The Court notes that between April 2, 2001, and the filing of his FAA Complaint,
Plaintiff apparently requested the FAA address the issue of banner-towing operations at PIE.  A
summary of those attempts are contained in the Director's Determination (Doc. No. 1, Exhibit F,
pp. 8 - 10).

contacted "Orlando FAA District Offices and requested a second opinion of the suitability of PIE

for banner towing" (¶44).  On January 26, 2005, the FAA Orlando Flight Standards District

Office (hereinafter "FSDO") conducted a  suitability survey of PIE to "evaluate whether or not

banner-towing operations could be conducted safely at PIE."  On February 23, 2005, the FAA

Orlando FSDO wrote a letter to Plaintiff in which it advised, "we have determined that at this

time banner-towing operations can be conducted safely at the St. Petersburg/Clearwater

International Airport (PIE)" (¶¶45 - 48 and Exhibit K).  On April 6, 2005, a credentialed FAA

Aviation Safety Inspector (hereinafter "ASI") from the FAA Orlando FSDO issued a statement

confirming it could not identify any hazard with the simultaneous operation of banner-towing

fixed wing aircraft and "lighter than air" aircraft (¶¶49 - 51 and Exhibit L).

Plaintiff alleges that Resolution No. 01- 45 "creates an unconstitutional prohibition

and/or restraint on commercial speech without protecting any legitimate government interest"

and that Defendant "has engaged in a systematic course of conduct to prevent BRUCKNER from

accessing his right to use the St. Petersburg-Clearwater International Airport for legitimate

business and commercial activities that involve commercial speech" (¶¶ 4 and 5).  Plaintiff

further alleges that Defendant is depriving Plaintiff of "the guarantees under federal law to

operate his Banner-towing operation at the airport *on reasonable terms and without unjust

discrimination*" and that Defendant is in violation of 14 C.F.R. pt. 152, App. D (¶¶6 and 12).

In his Verified Complaint (hereinafter "complaint"), Plaintiff seeks declaratory and

injunctive relief with respect to Resolution No. 01- 45.  Plaintiff asserts six counts against

Defendant: Count I -- The Challenged Legislation Violates the First Amendment; Count II – The

Challenged Legislation Violates the Equal Protection Doctrine; Count III -- The Challenged

Legislation Fails to Provide Adequate Alternative Avenues of Communication; Count VIII[6] --

The Challenged Legislation Is a Violation of the Police Power and Fails to Substantially

Advance Any Government Interest; Count IX -- Damages; and Count X -- Entitlement to

Attorney's Fees Pursuant to 42 U.S.C. §1988.

Since the filing of Defendant's motion to dismiss and Plaintiff's opposition thereto, the

parties filed additional documentation in support of their relative positions.[7]  Specifically,

Plaintiff filed an FAA Memorandum dated November 21, 2005 (hereinafter "FAA

Memorandum")(Doc. No. 18).  The FAA Memorandum states that on October 18, 2005, the

Atlanta FSDO conducted a special inspection at PIE to determine if banner tow operations could

be conducted safely.[8]  The FAA Memorandum concludes that:

> As a result of the inspection, it has been determined that banner tow operations could
> be conducted safely at the PIE airport with the Airport Manager's approval and a
> Letter of Agreement between Air Traffic Control and the banner tow operator.  The
> proposed area for the banner tow operations is sufficient to provide the minimum
> recommended distance from the nearest taxiway or runway in accordance with current
> FAA guidance.

Defendant filed the Declaration of Charles Erhard ("Erhard"), Division Manager for the

Airports Compliance Division of the FAA's Office of Airport Safety and Standards, dated

September 16, 2005 (Doc. No. 19).  The Airports Compliance Division holds primary

responsibility for interpreting policies and resolving matters that involve the federal obligations

of airport sponsors (Doc. No. 19, ¶ 4).  Erhard states that:

[R]ecords of the Airports Compliance Division show that the subject of banner-towing

---

[6]Plaintiff omits Counts IV - VII from his complaint.

[7]These filings were not at the direction or request of the Court.

[8]Aeronautical Study No. 2005-ASO-668-NRA, St. Petersburg-Clearwater (PIE), Florida.

at St. Petersburg-Clearwater Airport (PIE) was addressed in FAA Docket No. 16-03-1, Florida Aerial Advertising v. St. Petersburg-Clearwater International Airport, and that a Director's Determination was entered on December 18, 2003 determining that PIE was not in violation of applicable Federal law and its Federal grant and surplus property obligations in its prohibitions of all banner-towing operations at PIE.

(Doc. No. 19, Erhard Decl., ¶5). Erhard further states that "[r]ecords show that the December 18, 2003 Director's Determination was never appealed . . . and, thus the Director's Determination is the FAA's final decision on this matter in accord with FAA regulations" (Doc. No. 19, Erhard Decl., ¶6). Erhard concludes that "[a] new finding by a FAA Flight Standards District Office based upon the same subject matter would not reopen the case. Rather, the Complainant must file a new Part 16 Complaint to have this matter reconsidered" (Doc. No. 19, Erhard Decl., ¶7).

## II.    Defendant's Motion to Dismiss

Defendant moves to dismiss Plaintiff's claims based on lack of subject matter jurisdiction. Specifically, Defendant argues that original subject matter jurisdiction lies with the FAA, there is no private right of action under 49 U.S.C. §47101, *et seq.*, and Plaintiff's first amendment claim is a collateral attack upon an administrative order and is barred as a matter of law. Defendant further argues that Plaintiff's complaint fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) since it is barred by the doctrine of administrative res judicata.

### A.    Standard of Review Pursuant to Rule 12(b)(1)

A motion to dismiss based on lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) comes in two forms: "facial attacks" and "factual attacks." See Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "'Facial attacks' on the complaint require []the court

to merely look to see if [the] plaintiff has sufficiently alleged a basis of subject matter

jurisdiction, and the allegations in his complaint are taken as true for the purposes of the

motion." Id. at 1529 (quoting Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir.

1980)).  However, "factual attacks" challenge "the existence of subject matter in fact,

irrespective of the pleadings, and matters outside the pleading, such as testimony and affidavits,

are considered."  Id.

> When the attack is factual:
>
> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. Pro. 56.
> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very
> power to hear the case-- there is substantial authority that the trial court is free to weigh
> the evidence and satisfy itself as to the existence of its power to hear the case.  In short,
> no presumptive truthfulness attaches to plaintiff's allegation, and the existence of
> disputed material facts will not preclude the trial court from evaluating for itself the
> merits of jurisdictional claims.

Id. (citation omitted).[9]

### B.    Discussion

The present case involves a factual attack in that Defendant claims that original

---

[9]Normally, if a factual attack on subject matter jurisdiction also implicates an element of
the cause of action:

> [T]he proper course of action for the district court . . . is to find that jurisdiction exists
> and deal with the objection as a direct attack on the merits of the plaintiff's case . . . This
> refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides,
> moreover, a greater level of protection to the plaintiff who in truth is facing a challenge
> to
> the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or
> Rule 56 . . . both of which place great restrictions on the district court's discretion.

Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990)(citation omitted).  However, in
the present case, Defendant's factual attack does not implicate an element of Plaintiff's causes of
action.

jurisdiction lies with the FAA and that there is no private right of action under 49 U.S.C.

§47101, *et seq.* This Court agrees with Defendant that it lacks subject matter jurisdiction over

Plaintiff's claims.

       1.      The FAA Previously Decided the Gravamen of Plaintiff's Complaint

      On February 28, 2001, Metz sent a letter to Plaintiff denying Plaintiff's request to

conduct banner towing operations at PIE. Thereafter, on March 13, 2001, the Pinellas BOCC

adopted Resolution No. 01- 45 which prohibits banner-towing operations at PIE. On or about

April 30, 2003, Plaintiff filed his FAA Complaint against PIE under FAA Rules of Practice for

Federally-Assisted Airport Proceedings, 14 C.F.R. pt. 16.

      On December 18, 2003, the FAA issued a sixteen page Director's Determination which

concluded that:

> (i) The Respondent[10], by relying on a FAA safety determination to justify the banning of aerial advertising, has made the Petersburg-Clearwater International Airport available to the public on reasonable terms and without unjust discrimination as required under 49 U.S.C. § 47107(a)(1).

> (ii) The restrictions on banner-towing operations at PIE do not constitute a granting of an exclusive right of airport use in violation of the prohibition against exclusive rights under 49 USC [sic] §40103(e) and 49 U.S.C. §47107(a)(4).

(Doc. No. 1, Exhibit F). The Director's Determination contained language advising Plaintiff of

his right to appeal. Specifically, the Director's Determination included the following language

with respect to Plaintiff's right to appeal:

> Any party to this proceeding adversely affected by the Director's Determination may appeal this initial determination to the FAA Associate Administrator for Airports pursuant to 14 CFR 16.33(b) within thirty (30) days after service of the Director's Determination.

---

    [10]St. Petersburg-Clearwater International Airport.

However, Plaintiff did not file an appeal.  Since no appeal was filed within the time specified,

"the Director's determination becomes the final decision and order of the FAA without further

action."  <u>See</u> 14 C.F.R. §16.33(e).   "A Director's determination that becomes final because there

is no administrative appeal is not judicially reviewable."  <u>See id</u>; <u>see also</u> 14 C.F.R.

§16.247(b)(4).

> 2.     There is No Private Right of Action Under The Airports and Airways
>        Improvement Act ("AAIA"), 49 U.S.C. §47101, *et seq.*[11]

The crux of Plaintiff's argument that this Court does have subject matter jurisdiction is

that a significant change in circumstances has occurred since the December 18, 2003 Director's

Determination.  Namely, Plaintiff argues that subsequent to the Director's Determination, "the

FAA has taken another look at banner towing activities at the airport, and has now concluded

that such operations are both safe and feasible" (Doc. No. 12).  In support of his position that the

Airport and Airways Improvement Act ("AAIA"), 49 U.S.C. §47101, *et seq.*[12], supports his

private right of action vis-a-vis 42 U.S.C.§1983, and that this Court should hear the present

action, Plaintiff relies on <u>Southwest Air Ambulance, Inc. v. The City of Las Cruces</u>, 268 F.3d

1161 (10th Cir. 2001).  However, the Court finds Plaintiff's reliance on this cited authority

inapposite under the facts of this case since <u>Southwest Air Ambulance</u> examined the federal

Anti-Head Tax Act ("AHTA"), 49 U.S.C. §40116.  Plaintiff ignores Eleventh Circuit case law

that has specifically held that there is no private right of action under the AAIA.  <u>See</u> <u>Arrow</u>

---

[11]Broadly speaking, 49 U.S.C. §47101, *et seq.*, governs federal assistance for the development of public use airports.  "Section 47107, *et seq.*, sets forth assurances to which an airport sponsor agrees as a condition for receiving Federal financial assistance" (Doc. No. 1, Exhibit F, p. 3).

[12]As codified in 14 C.F.R. pt. 152.

Airways v. Dade County, 749 F.2d 1489, 1491 (11th Cir. 1985).[13]  Furthermore, 42 U.S.C.

§1983 does not provide a remedy to enforce alleged violations of the AAIA.  See In re Jet 1

Center, Inc., 322 B.R.182, 201-02 (M.D. Fla. 2005).

      3.      Plaintiff's Constitutional Claims Are An Impermissible Collateral Attack On
              The Director's Determination

The merits of Plaintiff's constitutional arguments are inescapably intertwined with a

review of the merits of the Director's Determination.  The Court finds Plaintiff's argument that

the present action is not a "collateral attack on the order of the FAA" since the FAA is not a

named party in the suit disingenuous and meritless.  By way of example, despite Plaintiff's

contention that the instant action is not a collateral attack on the Director's Determination,

Plaintiff alleges in his complaint that  "[t]he RESOLUTION was based on an improper predicate

in that its only support is derived from the 'opinions' of Air traffic controllers at PIE who are

neither authorized nor qualified to evaluate the safety of Banner towing operations at PIE" and

that  "[t]he challenged legislation was adopted on the basis of 'shoddy data,' 'shoddy findings,'

and Plaintiff intends to 'challenge the findings' upon which the RESOLUTION is based."  (Doc.

No. 1, ¶¶57 and 78).  In attacking Resolution 01- 45, Plaintiff is really attacking the Director's

Determination.  Plaintiff cannot use the present action to once again dispute the factual bases of

the Director's Determination.

From a review of the Director's Determination, it is clear that Plaintiff has already

attempted to dispute air traffic data advanced by PIE and that the FAA reached its determination

after a review of several safety analyses and determinations which were conducted between

December 15, 2000 and April 11, 2003 (Doc. No. 1, Exhibit L, pp. 10 and 12 - 14).  The FAA

---

[13]Pursuant to its predecessor 49 U.S.C. §2201, *et seq.*

found that:

> Respondent's current restriction on banner-towing activities is consistent with the
> obligations relating to reasonableness, unjust discrimination, and exclusive
> rights, and is supported by the facts. The FM's safety analyses and evaluations
> clearly demonstrate that banner-towing operations cannot be safety [sic]
> accommodated and support the safety justification made by the Airport. Therefore,
> the FM is not persuaded by the Complainant's argument that the Airport lacks
> justification for implementing the restriction.

(Doc. No. 1, Exhibit F, pp. 14 - 15).

Plaintiff's constitutional claims are an impermissible collateral challenge to the FAA's

Director's Determination. See Green v. Brantley, 981 F.2d 514, 521 (11th Cir. 1993); see also

Doe v. F.A.A., 432 F.3d 1259, 1263 (11th Cir. 2005). The Court notes that in Green the court of

appeals had jurisdiction over an appeal of a final order of the FAA. In Doe, the plaintiffs

attempted to bypass the statutorily established administrative review process[14] and instead filed a

motion for preliminary injunction in the district court. Here, Plaintiff did not appeal the

Director's Determination and, therefore, the Director's Determination is not judicially

reviewable. See 14 C.F.R. §16.33(e); see also 14 C.F.R. §16.247(b)(4). Therefore, while Green

and Doe are not directly on point and factually distinguishable to the facts of the present case,

they are instructive in that they hold that when constitutional claims fall within the ambit of an

administrative scheme, as here, the district court is without subject matter jurisdiction.

The constitutional and statutory issues raised in this action stem from the same harm that

prompted the FAA Complaint -- the denial of Plaintiff's request to conduct banner towing

operations at PIE. Plaintiff's claims that Defendant, through Resolution No. 01- 45, has violated

his constitutional rights would necessarily require this Court to conduct an impermissible review

---

[14]Pursuant to 49 U.S.C. §§44701 - 44723.

of the Director's Determination and the factual bases for its findings and conclusions.  Despite

how Plaintiff has couched his causes of action, this Court lacks subject matter jurisdiction over

Plaintiff's claims.

Since this Court finds it lacks subject matter jurisdiction over Plaintiff's claims, it will

not address the merits of  Defendant's argument that Plaintiff's complaint fails to state a claim

upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### IV.    Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1)    Defendant's motion to dismiss (Doc. No. 5) is **GRANTED** in that this Court

lacks subject matter jurisdiction over Plaintiff's claims.  The Clerk is directed to

CLOSE this case and TERMINATE any pending motions.

(2)    Plaintiff's Unopposed Motion for Oral Argument on Defendant's Motion to

Dismiss the Complaint (Doc. No. 11) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 9th day of February, 2006.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record